UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| KIRSTEN W., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:25-CV-00107-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| COMMISIONER OF SSA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Commissioner of Social Security ("Commissioner") denied Plaintiff's application for supplemental security income. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff, [R. 13], and the Commissioner, [R. 18], have filed their respective briefs. *See also* [R. 19 (Plaintiff's Notice of No Reply)]. For the reasons that follow, the Court cannot find that the Commissioner's decision is supported by substantial evidence in the record or that it complies with the applicable regulations. Accordingly, the Court will reverse the Commissioner's decision and remand this case to the Commissioner for further consideration not inconsistent with this Memorandum Opinion and Order.

## I. BACKGROUND

Plaintiff is twenty-seven years old and completed the twelfth grade but was in special education throughout school. [R. 8-9, p. 157].[1] She is presently unemployed and does not have any past relevant work experience. *See id.* Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"),

---

[1] Page number citations refer to the ECF-assigned page number as opposed to the page number included in the original pleading as there are sometimes disparities between the two.

on November 21, 2022. [R. 8-5, pp. 2–10]. Plaintiff alleges disability beginning on October 1, 2021. *Id.* at 2. Plaintiff's application was denied at the agency level initially and upon reconsideration. [R. 8-3, pp. 70–80]; [R. 8-4, pp. 17–24]. Following a hearing, [R. 8-2, pp. 46–73], Administrative Law Judge Kendra S. Kleber ("ALJ") found Plaintiff not disabled on April 29, 2024, *id.* at 41. Plaintiff requested review by the Appeals Council, which was denied on May 15, 2025. *Id.* at 4–12.

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 416.920; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. [R. 8-2, pp. 28–41 (ALJ opinion)]. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between the application date, November 21, 2022, and the date of the ALJ's review, April 29, 2024. [R. 8-2, pp. 31, 41]. Next, the ALJ found that Plaintiff had severe impairments of attention deficit hyperactivity disorder (ADHD) inattentive type, obsessive-compulsive disorder, social anxiety, mood disorder/major depressive disorder, and borderline intellectual function. *Id.* at 31. Third, the ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of a listed impairment from 20 C.F.R. § 416, Subpt. P, App'x 1. *Id.* at 32. The ALJ determined Plaintiff's residual function capacity ("RFC") finding that Plaintiff could

> perform a full range of work at all exertional levels but with the following nonexertional limitations: Ms. Weston continues to be able to understand, remember, and perform simple tasks, defined as those which can be learned after short demonstration or within 30 days. She is able to maintain attention and concentration for simple tasks requiring occasional independent judgments, questions, and decisions relating to simple tasks without an unreasonable number or length of rest periods over two hour periods between regular breaks. Ms. Weston is able to adapt to occasional workplace changes. She is now able to perform work that involves occasional and superficial interaction with the public, coworkers, and supervisors, with superficial being defined as interaction for the purpose of

> greeting, serving, or receiving instructions. Given Ms. Weston's allegations of seizures, safety precautions are appropriate and so, the work she can perform should not involve climbing ladders or scaffolds, should not involve exposure to unprotected heights or uncovered industrial machinery, and should not require commercial driving.

*Id.* at 34. Fourth, the ALJ found that Plaintiff did not have any past relevant work. *Id.* at 40. Fifth and finally, considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.*

Based on this evaluation, the ALJ concluded that Plaintiff was not disabled, as defined by the Act, at any point since Plaintiff's application date of November 21, 2022. *Id.* at 41. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied on May 15, 2025. *Id.* at 4–12. At that point, the denial became the final decision of the Commissioner. On June 18, 2025, Plaintiff filed this civil action seeking judicial review from this Court. [R. 1]. The Commissioner answered through filing the administrative record. [R. 8 (including attachments)]. On January 13, 2026, Plaintiff filed her brief. [R. 13], the Commissioner then submitted his brief, [R. 18], and Plaintiff filed a Notice of No Reply, [R. 19]. The matter now stands submitted for review.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the

Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III. ANALYSIS

Plaintiff contends as her only grounds for relief that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of Emily E. Skaggs PsyD ("Dr. Skaggs") and Edd Easton-Hogg PsyD ("Dr. Easton-Hogg"). [R. 13, p. 1]; *see also* [R. 8-2, pp. 36–39 (detailing and evaluating the medical opinions of Dr. Skaggs and Dr. Easton-Hogg)]; [R. 8-7, pp. 66–70 (Dr. Skaggs's report)]; [R. 8-9, pp. 157–61 (Dr. Easton-Hogg's report)]. Plaintiff provides several arguments in support of her stated grounds for relief. *See* [R. 13, pp. 10–16]. For the reasons set forth below, the Court finds that the ALJ did not properly consider the medical opinions of Dr. Skaggs and Dr. Easton-Hogg and that this error was not harmless.

The ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. § 416.920c(b). Specifically, an ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. § 416.920c(c)(1)–(5). But the ALJ need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. § 416.920c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. § 416.920c(c)(1). "In practice, this means that the 'supportability' factor 'concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Crystal E. J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4861, 2022 WL 2680069,

at *6 (S.D. Ohio July 12, 2022), *report and recommendation adopted*, 2022 WL 2974734 (S.D. Ohio July 27, 2022) (quoting *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021)). The more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. § 416.920c(c)(2). "To further illuminate this distinction, 'supportability' relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, 'consistency' relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record." *Marika G. v. O'Malley*, No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *4 (W.D. Ky. Dec. 20, 2024) (emphasis in original) (citing § 416.920c(c)(1)–(2)), *report and recommendation adopted*, 2025 WL 384416 (W.D. Ky. Feb. 4, 2025).

"A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-CV-232-JEG, 2023 WL 7131807, at *9 (N.D. Ohio Oct. 30, 2023) (quoting *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261-JDG, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020)). This means that the ALJ must "articulate the supportability and consistency of each medical opinion," *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at *2 (E.D. Ky. Mar. 29, 2023) (citations omitted), but he or she "is not required to specifically use the terms supportability or consistency in [the] analysis." *Id.* (internal quotation marks omitted) (quoting *Childers v. Kijakazi*, Civil No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022)); *see also Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at *4 (E.D. Ky. Sept. 13, 2024) ("The ALJ describes his consistency findings but does not necessarily use those words. Such specificity or magical incantation of words is not required.").

As mentioned, the law is clear that the ALJ must address and consider both the supportability and consistency factors when evaluating medical opinions. *See* § 416.920c(b)(2) ("Therefore, we *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." (emphasis added)); *Lindsey v. Comm'r of Soc. Sec.*, No. 3:20 CV 01127, 2021 WL 5023012, at *3 (N.D. Ohio July 26, 2021) ("[T]his Court cannot engage in meaningful judicial review without being able to trace the ALJ's specific reasoning regarding the supportability and consistency of each of the limitations that may render Lindsey disabled."), *report and recommendation adopted*, 2021 WL 4472211 (N.D. Ohio Sept. 30, 2021). "[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted).

Relevant to this case, on September 16, 2021, Plaintiff underwent a consultative examination by Dr. Skaggs. [R. 8-7, pp. 66–70]. Dr. Skaggs made the following functional capacity findings:

> 1. Ms. Weston's capacity to understand, remember, and carry out instructions towards the performance of simple, repetitive tasks appears affected by her symptoms of anxiety and cognitive deficits to a moderate degree.
> 2. Her ability to tolerate stress and pressure of day-today employment appears affected by these impairments to a moderate to *marked degree*.
> 3. Her ability to sustain attention and concentration towards the performance of simple, repetitive tasks appears affected by these impairments to a slight to moderate degree.
> 4. Her capacity to respond appropriately to supervisors and coworkers in a work setting appears affected by these impairments to a slight degree.

*Id.* at 69 (emphasis added). On March 21, 2023, Plaintiff had a consultative psychological evaluation with Dr. Easton-Hogg. [R. 8-9, pp. 157–61]. Dr. Easton-Hogg made the following

functional capacity findings:

> 1. The claimant's capacity to understand and remember instructions towards the performance of simple tasks appears affected by symptoms to a moderate degree.
> 2. Ability to sustain concentration and have persistence to carry out simple instructions appears affected by these impairments to a *marked degree*.
> 3. Capacity to respond appropriately to supervisors, coworkers and the public appears affected by these impairments to a moderate degree.
> 4. Ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a *marked degree*.

*Id.* at 159 (emphasis added).

In considering the persuasiveness of Dr. Skaggs's and Dr. Easton-Hogg's opinions, the ALJ provided the following:

> Dr. Skaggs opined that Ms. Weston's capacity to understand, remember, and carry out instructions toward performance of simple, repetitive tasks appeared moderately limited, that her ability to tolerate stress and pressure of day-to-day employment appeared moderately-to markedly limited, that her ability to sustain attention and concentration toward performance of simple, repetitive tasks appeared slightly-to-moderately limited, and that her capacity to appropriately respond to supervisors/coworkers in a work setting appeared slightly limited (D4F). *This opinion is supported by little more than reference to remote records and findings from a one-off examination.* It is inconsistent with Ms. Weston's self-reported activities of daily living and demonstrated ability and is inconsistent with generally unremarkable psychiatric findings at office visit examinations throughout the relevant period, as previously discussed, which suggest no more than a moderate limitation in any area of functioning. Accordingly, this opinion is not persuasive.
>
> Dr. Easton-Hogg opined that Ms. Weston's capacity to understand and remember instructions toward performance of simple tasks appeared moderately limited, that her ability to sustain concentration and have persistence to carry out simple instructions appeared markedly limited, that her ability to appropriately respond to supervisors, coworkers, and the public appeared moderately limited, and that her ability to tolerate stress and pressure of day-to-day employment appeared markedly limited (D6F). *This opinion is supported by little more than findings from a one-off examination.* It is inconsistent with Ms. Weston's self-reported activities of daily living and demonstrated ability and is inconsistent with generally unremarkable psychiatric findings at office visit examinations throughout the relevant period, as previously discussed, which suggest no more than a moderate limitation in any area of functioning. Accordingly, this opinion is not persuasive.

[R. 8-2, pp. 38–39 (emphasis added)]. After finding both Dr. Skaggs's and Dr. Easton-Hogg's

opinions "not persuasive," [R. 8-2, pp. 38–39], the ALJ's RFC determined that Plaintiff could "perform a full range of work at all exertional levels" but with various "nonexertional limitations." *Id.* at 34.

Plaintiff argues that "the ALJ misunderstood and improperly applied the review standard for the supportability factor," and that "[t]his error alone warrants remand." [R. 13, pp. 12–13]. Specifically, Plaintiff argues that the ALJ failed to properly "consider how relevant the objective medical evidence and supporting explanations presented by a medical source are to support the opinion." *Id.* Rather unhelpfully, the Commissioner's response provides nothing more than a single-sentence reiteration of the ALJ's supportability consideration. For instance, as to Dr. Skaggs, the Commissioner provides, "the ALJ pointed out that Dr. Skaggs's opinion was supported by little more than reference to remote (outside the relevant period) records and findings from that doctor's one-time examination." [R. 18, p. 6 (first citing § 416.920c(c)(1); and then citing *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 816–17 (6th Cir. 2020))]. As to Dr. Eaton-Hogg, the Commissioner recites, "the ALJ observed that the opinion was supported by little more than Dr. Easton-Hogg's findings from the one-time examination." *Id.* at 9 (first citing § 416.920c(c)(1); and then citing *Deaner*, 840 F. App'x at 816–17). Other than regurgitating the ALJ's single sentence on supportability, the Commissioner makes no other argument on supportability and fails to point to any other place in the ALJ's opinion that provides an explanation on supportability. *See generally id.* at 6–9. The Court agrees with Plaintiff and finds that the ALJ failed to sufficiently evaluate and articulate the supportability of Dr. Skaggs's and Dr. Easton-Hogg's opinions.

The ALJ's entire analysis on the supportability of Dr. Skaggs's opinion is as follows: "This opinion is supported by little more than reference to remote records and findings from a one-off examination." [R. 8-2, p. 38]. For Dr. Easton-Hogg, the ALJ provides even less, stating only,

"[t]his opinion is supported by little more than findings from a one-off examination." *Id.* at 39. These sentences do not adequately address supportability because they fail to explain the ALJ's evaluation of the "objective medical evidence and supporting explanation provided by [the doctors] to bolster their own opinion[s]." *Marika G.*, 2024 WL 5465207, at *4; *see also* § 416.920c(c)(1). Instead, the ALJ appears to discredit these doctors' opinions solely due to them being based on a single examination, rather than explaining or evaluating the specific findings from those examinations and Plaintiff's medical records and whether such findings and records supported the doctors' conclusions.

Such a consideration—that a medical opinion is based on a single exam—is permitted under the regulation, but it typically relates to the "Relationship with the Claimant" factor. *See* § 416.920c(c)(3)(i)–(iv) (stating that the ALJ may consider the frequency, length, and extent of the treatment relationship); *see also Barker v. Comm'r of Soc. Sec.*, No. 1:19-CV-993, 2020 WL 6193350, at *8 (S.D. Ohio Oct. 22, 2020) (citing to the "treatment relationship" factor under the previous regulation and noting "Dr. Bohinski examined plaintiff on a single occasion and based his opinion solely on that single exam"), *report and recommendation adopted*, 2022 WL 58368 (S.D. Ohio Jan. 6, 2022); *Wells v. Berryhill*, No. 16-CV-262-JMH, 2017 WL 2727090, at *6 (E.D. Ky. June 22, 2017) (similarly citing to the treatment relationship factor under the previous regulation and noting "Dr. Plavin based these opinions on a one-time examination of Plaintiff").

This is not to say that the ALJ's consideration of Dr. Skaggs's and Dr. Eaton-Hogg's examinations as being "one-off" examinations cannot also speak to the supportability factor, and the same is true for the ALJ's fleeting reference to Dr. Skagg's opinion being based on "remote records." In *Deaner*, cited by the Commissioner, the court found a consultive examiner's diagnoses of four severe impairments unpersuasive, noting that such diagnoses were "based on a one-time

examination" of the claimant. 840 F. App'x at 817; *see also* [R. 18, p. 6]. However, the Sixth Circuit thereafter referenced other supportability considerations articulated by the ALJ in rejecting the consultive examiner's opinion. *Deaner,* 840 F. App'x at 817 (noting the examiner did not review any of the plaintiff's medical records and failed to provide a rationale for specific opinions which were contradicted by plaintiff's documented work history). All this to say, *Deaner* does not support the broader conclusion that an ALJ simply mentioning that an opinion was based on a one-time examination is sufficient, standing alone, to satisfy the ALJ's supportability explanation. *See id.*

Further, the ALJ's reference to Dr. Skaggs's opinion being based in part on "remote records" does not cure this error. Even assuming that this too falls under the supportability factor, the ALJ failed to explain what records she was referring to and sufficiently articulate her reasons for finding Dr. Skaggs's opinion as unsupported based on this fact. Even in combination with the "one-time examination" comment, the Court is unable to trace a path between the underlying objective medical evidence and the ALJ's persuasiveness conclusion. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." (citation and quotation marks omitted)). And in any event, no such additional explanation is present in the analysis of Dr. Easton-Hogg's opinion, and accordingly, remand would be necessary regardless.

In sum, the ALJ's persuasiveness discussion provides the Court with no meaningful insight into how the ALJ considered the supportability factor for Dr. Skaggs's and Dr. Easton-Hogg's opinions. That is, the ALJ failed to articulate how the doctors' seemingly scant examinations made the doctors' opinions unsupported by their examination findings or to otherwise explain what was

missing from the examination findings that made the opinions unpersuasive.[2] On this record, the ALJ failed to meaningfully consider supportability and explain the "objective medical evidence" from their findings and exams that fails to support the opinions of Dr. Skaggs and Dr. Easton-Hogg. § 416.920c(c)(1).[3]

Moreover, the ALJ provides no further supportability analysis elsewhere in her opinion, and the Commissioner points the Court to no other supportability discussion. *See generally* [R. 8-2, pp. 28–41]. Earlier in the opinion, the ALJ discusses Dr. Skaggs's and Dr. Easton-Hogg's findings from their examinations of Plaintiff. *Id.* at 36–37. However, this portion of the opinion likewise does not provide the Court with any helpful insight. Instead, the ALJ here only objectively recites Dr. Skaggs's and Dr. Easton-Hogg's examination findings. *See id.* The ALJ never weighs, considers, or explains how these findings do or do not support those doctors' medical opinions. *See id.*; *Kaschak v. Kijakazi*, No. CV 21-354-E, 2023 WL 2354812, at *4 (W.D. Pa. Mar. 3, 2023) ("[I]f the Court could detect consideration of supportability in the ALJ's evaluation of Ms. Connell's medical opinions despite the absence of a specific reference thereto, then remand would be unnecessary. But the Court has found no coded reference to supportability in the ALJ's decision."); *Crystal E. J.*, 2022 WL 2680069, at *7 ("[A] reader with no previous knowledge of Plaintiff's record would have no information regarding how Ms. Gillespie reached the conclusions

---

[2] Relatedly, Plaintiff also argues that the ALJ's "one-off" logic and rationale could equally be applied to the non-examining opinions of the state agency mental evaluators relied on by the ALJ "since neither provider offered more than one opinion or had a treating relationship with Plaintiff." [R. 13, p. 13 (citing 20 C.F.R. § 426.920c(c)(3)(v)("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."))].

[3] Plaintiff also argues that the ALJ erred in deeming the opinions of Dr. Skaggs and Dr. Easton-Hogg as "one-off examination[s]" because those opinions were consistent with each other. [R. 13, p. 13]. After detailing some of the consistencies between these opinions, Plaintiff states that "[t]he ALJ should have considered these similarities to properly assess the consistency of these opinions, rather than mischaracterize them as 'one-off' opinions." *Id.* Plaintiff appears to misread this portion of the ALJ's opinion. The ALJ did not discredit Dr. Skaggs's and Dr. Easton-Hogg's reports as "one-off *opinions*," but as based on "one-off *examination*[s]." [R. 8-2, pp. 38–39]. In any event, the Court finds no error in the ALJ's consistency analysis. *See* [R. 18, pp. 6–11 (outlining the ALJ's discussion of the consistency factor)].

which the ALJ found to be only 'somewhat persuasive' or have 'little persuasive value,' as the ALJ did not discuss the critical objective medical evidence underlying Ms. Gillespie's opinion as required.").

Without such explanation, the Court is precluded from "meaningful review of [her] finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune*, 2022 WL 2910002, at *3 (citations omitted); *see also Burns v. Bisignano*, No. 3:25-CV-00109-CHS, 2026 WL 887388, at *4, *6 (E.D. Tenn. Mar. 30, 2026) (remanding where the ALJ failed to properly consider supportability); *Bienvenu v. Bisignano*, No. 1:24-CV-00080, 2025 WL 4960046, at *5–*6 (E.D. Tenn. Sept. 23, 2025) (same); *Devin W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-962, 2024 WL 177288, at *11 (S.D. Ohio Jan. 17, 2024) (recommending the same), *report and recommendation adopted*, 2024 WL 691388 (S.D. Ohio Feb. 20, 2024). Accordingly, the ALJ erred by failing to articulate the supportability of Dr. Skaggs's and Dr. Easton-Hogg's opinions.

The Commissioner fails to address harmless error. *See generally* [R. 18]. Although the Sixth Circuit has yet to rule on whether an ALJ's failure to articulate the supportability or consistency factors requires a harmless error analysis, district courts within the Sixth Circuit have consistently reviewed for such analysis. *See, e.g.*, *Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *10 (E.D. Tenn. May 19, 2023); *Vaughn v. Comm'r of Soc. Sec.*, No. 20-CV-1119-TMP, 2021 WL 3056108, at *12 (W.D. Tenn. July 20, 2021); *Katelynn C. v. Comm'r of Soc. Sec.*, No. 3:25-CV-257, 2026 WL 890433, at *5 (S.D. Ohio Apr. 1, 2026); *Wilson C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00457, 2022 WL 4244215, at *7 (S.D. Ohio Sept. 15, 2022). Specifically, most district courts within the Sixth Circuit have concluded that an ALJ's failure to explain her consideration of either the supportability and consistency factors when determining the persuasiveness of a medical opinion "can only be excused as harmless error if: (1) the medical

opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met." *Wilson C.*, 2022 WL 4244215, at *7; *see also Katelynn C.*, 2026 WL 890433, at *4 (collecting cases applying this test).

First, "an opinion is 'patently deficient' when it is not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Brown v. Comm'r of Soc. Sec.*, No. 219CV12965TGBDRG, 2021 WL 3240392, at *11 (E.D. Mich. July 30, 2021) (quoting *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 423 (6th Cir. 2013)). Based on review of the reports by Dr. Skaggs, [R. 8-7, pp. 66–70], and Dr. Easton-Hogg, [R. 8-9, pp. 157–61], they appear to be based on "acceptable clinical and laboratory diagnostic techniques," *Brown*, 2021 WL 3240392, at *11. As mentioned, the Commissioner fails to address any harmless error consideration in its brief. *See generally* [R. 18]. Accordingly, and on this record, the Court can see no reason to find Dr. Skaggs's and Dr. Easton-Hogg's opinions as patently deficient. [R. 8-7, pp. 66–70]; [R. 8-9, pp. 157–61]; *see also Ortiz v. Comm'r of Soc. Sec.*, No. 1:25-CV-00703-BYP, 2026 WL 522873, at *18 (N.D. Ohio Feb. 25, 2026), *report and recommendation adopted*, 2026 WL 782441 (N.D. Ohio Mar. 19, 2026); ("Dr. Diab's opinion does not meet the 'patently deficient' standard because he cited supporting objective medical evidence, observations, and symptoms to explain the basis for his opinion.").

Second, both doctors' opinions included marked limitations for Plaintiff. [R. 8-7, p. 69]; [R. 8-9, p. 159]. Dr. Skaggs found that Plaintiff was markedly limited in the ability to "tolerate stress and pressure of day-today employment." [R. 8-7, p. 69]. Dr. Easton-Hogg found that Plaintiff was markedly limited in two categories: the ability to "sustain concentration and have persistence to carry out simple instructions" and the ability "tolerate stress and pressure of day-to-day employment." *Id.* Both doctors found that Plaintiff was either slightly or moderately limited

in the remaining functional capacities. *See* [R. 8-7, p. 69]; [R. 8-9, p. 159]. The RFC fails to account for these marked limitations, *compare* [R. 8-2, p. 34 (RFC)], *with* [R. 8-7, pp. 66–70 (Dr. Skaggs's report)]; [R. 8-9, pp. 157–61 (Dr. Easton-Hogg's report)], which is unsurprising since the ALJ discredited these opinions, finding each to be "not persuasive." [R. 8-2, pp. 38–39]. Accordingly, the Court cannot find that the RFC adopted or was otherwise consistent with these opinions.

Third, and finally, an ALJ error can still otherwise meet the goal of the regulation "when the ALJ's analysis of other opinions in the record or of the claimant's ailments calls to question the supportability of the opinion or its consistency with other evidence." *Whalen v. Comm'r of Soc. Sec.*, No. 1:24-CV-01928-SL, 2025 WL 1452713, at *14 (N.D. Ohio May 21, 2025) (citation omitted), *report and recommendation adopted*, 2025 WL 1756524 (N.D. Ohio June 25, 2025). The key question for this consideration is "whether the analysis as a whole permits the claimant and reviewing court to glean a 'clear understanding' of the reasons the limitations in an opinion were not adopted." *Id.* As explained above, the Court cannot glean such a "clear understanding" of the ALJ's consideration of the supportability of Dr. Skaggs's and Dr. Easton-Hogg's opinions. Accordingly, the Court cannot find that the goal of the regulation was otherwise met in the ALJ's error here. *See also Johnnie T. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3721, 2023 WL 6056457, at *11 (S.D. Ohio Sept. 18, 2023) ("The ALJ's decision in this matter does not otherwise meet the goal of the regulation as the failure to meet the mandatory minimum levels of articulation clearly frustrates the court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence."). Accordingly, the Court cannot find harmless error here under any of the categories recognized by district courts within the Sixth Circuit.

Moreover, courts within the Sixth Circuit that have found the ALJ's failure to consider the

supportability factor as harmless error have done so when the ALJ's supportability consideration could be implicitly gleaned from other sections of the ALJ's analysis. *See, e.g.*, *Griffin*, 2023 WL 3573734, at *10 (finding harmless error because the ALJ did "analyze the same medical evidence that the state agency medical consultants had available to them and distinguished their opinions based on the later-obtained evidence, including Plaintiff's documented pain"); *Vaughn*, 2021 WL 3056108, at *12 (finding harmless error where the ALJ's evaluation of the opinion was "predicated on a review of [the plaintiff's] medical history and, when recounting that same medical history, the ALJ identified several instances where [the plaintiff's] medical records did not support a finding of disability" such that "the ALJ's opinion is only one step removed from articulating why she believed the basis for [the] opinion was faulty, i.e. an explanation of the supportability factor"). No such analysis is apparent from the ALJ's opinion.

The ALJ considered the opinion evidence from four mental evaluation sources. *See* [R. 8-2, pp. 38–39]. As Plaintiff points out, [R. 13, pp. 15–16], two of these opinions were the examining opinions of Dr. Skaggs and Dr. Easton-Hogg, which found marked limitations. [R. 8-7, pp. 66–70]; [R. 8-9, pp. 157–61]. The other two sources were the opinions of the state agency mental evaluators. [R. 8-2, p. 38 (citing [R. 8-3, pp. 60–68, 70–80])]. By failing to account for the marked limitations found by Dr. Skaggs and Dr. Easton-Hogg in the RFC or to properly explain why they were not persuasive, the Court cannot find that the ALJ's error was harmless. *Compare* [R. 8-2, p. 34 (RFC)], *with* [R. 8-7, pp. 66–70 (Dr. Skaggs's report)]; [R. 8-9, pp. 157–61 (Dr. Easton-Hogg's report)].

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Hum. Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)). Under sentence four of 42 U.S.C. § 405(g), the Court can "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Accordingly, the Court cannot find that the ALJ error here was harmless and must remand this case to the Commissioner under Sentence Four of § 405(g) for further consideration not inconsistent with this Memorandum Opinion and Order.

## IV. CONCLUSION

For the above-stated reasons, the Court cannot find that the Commissioner's decision is supported by substantial evidence in the record or that it complies with the applicable regulations. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision is **REVERSED** and **REMANDED** to the Commissioner for further consideration not inconsistent with this Memorandum Opinion and Order.
2. A separate Judgment will be entered consistent with this Order.

This the 28th day of August, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY